AO 91 (Rev. 5/85) Criminal Complaint

ORIGINAL

# United States District Court

NORTHERN DISTRICT OF GEORGIA

FILED IN CHAMBERS
U.S.D.C. Atlanta

DUPLICATE

JAMES N. HATTEN, Clerk
By: _____
Deputy Clerk

UNITED STATES OF AMERICA
v.

YVONNE C. TAYLOR

**CRIMINAL COMPLAINT**

CASE NUMBER: 1:11-MJ- 0817

I, the undersigned complainant being duly sworn state the following is true and correct to the best of my knowledge and belief. On or about <u>May 29, 2011</u> in <u>Fulton</u> County, in the Northern District of Georgia defendant(s) did,

with the intent to evade a currency reporting requirement under Title 31, United States Code, Section 5316, knowingly conceal more than $10,000 in currency and other monetary instruments on the person of such individual defendant, and transported and transferred and attempted to transport and transfer such currency and monetary instruments from a place within the United States to a place outside of the United States.

In violation of 31 United States Code § 5332 (a)(1) and (b); and 18 United States Code § 2.

I further state that I am JENNIFER SUTTON, presently assigned as a Special Agent with the United States Immigration and Customs Enforcement in the Northern District of Georgia and that this complaint is based on the following facts:

PLEASE SEE ATTACHED AFFIDAVIT

Continued on the attached sheet and made a part hereof.     (X) Yes     ( ) No

Signature of Complainant
JENNIFER SUTTON

Based upon this complaint, this Court finds that there is probable cause to believe that an offense has been committed and that the defendant has committed it. Sworn to before me, and subscribed in my presence

<u>May 29, 2011</u>     at     <u>Atlanta, Georgia</u>
Date                           City and State

E. CLAYTON SCOFIELD, III
United States Magistrate Judge
Name and Title of Judicial Officer            Signature of Judicial Officer
AUSA Rodney D. Bullard

## AFFIDAVIT IN SUPPORT OF COMPLAINT

I, JENNIFER SUTTON, being duly sworn, depose, and state as follows:

### A. Introduction and Agent Background

1. I am employed as a Special Agent (SA) with the United States Immigration and Customs Enforcement (ICE), and have been employed in that capacity since August 2008. I am currently assigned to the office of the Special Agent in Charge (SAC), Atlanta, Georgia, and have been assigned there since January 2009. My duties and responsibilities include the investigation of civil and criminal violations of United States Codes. While working as a Special Agent with U.S. Immigration and Customs Enforcement, I have directed or otherwise been involved in investigating violations of Federal law including narcotics trafficking, money laundering, and illegal importation of firearms.

2. By this affidavit, I submit that probable cause exists to believe that Yvonne Castle TAYLOR has violated Title 31, United States Code, Sections 5332, Bulk Cash Smuggling.

### B. Sources of Information

3. I make this affidavit based upon personal knowledge derived from my participation in this investigation and information I have learned from discussions with other federal officers. Because this affidavit was prepared for the limited purpose of supporting a complaint against the individual listed below, I have not included each and every fact known about this investigation.

## C. Factual Summary – Probable Cause Basis

4. On May 27, 2011, SA Mary Horn with Homeland Security Investigations (HSI) Baltimore contacted the HSI SAC Atlanta Hartsfield Group in response to a tip regarding Yvonne Castle TAYLOR, a passenger who was scheduled to fly from Baltimore Washington Airport (BWI) onboard Air Tran flight 465 on May 28, 2011 to Hartsfield Jackson International Airport (HJAIA).

5. According to the tip, TAYLOR would be carrying a large bulk sum of cash on her person to Montego Bay, Jamaica and the money she was going to be carrying was proceeds from the sale of narcotics. SA Horn requested the HSI SAC Atlanta Hartsfield Group conduct an outbound currency exam on TAYLOR in the jet way as she boarded Air Tran flight 1056 from HJAIA to Montego Bay, Jamaica.

6. On the morning of May 28, 2011, TAYLOR arrived at BWI Airport, checked in for her flight and was examined by Transportation and Security Administration (TSA) screeners at the security checkpoint. According to SA Mary Horn, TAYLOR'S person and her carryon bags were searched by TSA personnel with negative results. SA Horn stated that after leaving the screening area, TAYLOR proceeded to her gate and entered the restroom. SA Horn stated that TAYLOR then boarded her flight after going to the restroom.

7. Customs and Border Protection Officers (CBPO'S) Abdullah Shahbaaz and Chris Horton spoke with TAYLOR in the jet way as she attempted to board Air Tran flight 1056. CBPO Shahbaaz asked TAYLOR if she had any currency to declare that she was taking with her to Jamaica. According to CBPO Shahbaaz, TAYLOR initially stated that she only had $3,000 in U.S. Currency. TAYLOR then retracted her statement and

said she had $2,000. TAYLOR then remarked that she was unaware how much money she had in her possession and stated that "I did not count the money I was given." TAYLOR did not state to CBPO Shahbaaz where she got her money or from whom she received it.

8. CBPO Shahbaaz then asked TAYLOR that if she were patted down by officers, would they find any additional currency. TAYLOR became increasingly nervous and after a few moments stated that she was carrying an undetermined amount of cash around her waist.

9. CBPO Shahbaaz asked TAYLOR for an approximate amount of the cash that she was carrying and TAYLOR stated that she thought she was carrying approximately $100,000 but that she did not know for sure because she did not count it. TAYLOR was then escorted from the jet way and brought back to Concourse E, the international terminal for a currency verification and seizure. CBP then contacted HSI SA Roy Rutherford.

10. CBP escorted TAYLOR to Concourse E, the International Terminal where Customs and Border Protection is stationed. TAYLOR was patted down and a tight girdle was found around TAYLOR'S midsection. Inside the girdle was a large amount of bulk currency. A currency count was conducted by CBP and the final count found inside the girdle was $100,100 in U.S. currency. Photos were taken of the currency and concealment method.

11. HSI SA Rutherford arrived on scene and interviewed CBPO Shahbaaz and Horton. Statements were later received from both officers. SA Rutherford then escorted

TAYLOR with CBPO Allah Swords back to the HSI SAC Atlanta Hartsfield Group Office located in the same International concourse.

12. SA Rutherford was not showing his weapon and was dressed in civilian attire. TAYLOR was brought to the conference room in the HSI Office and sat down and given a bottle of water to drink. SA Rutherford then introduced himself and advised TAYLOR of her situation and stated to TAYLOR not to answer any questions or make any statements until TAYLOR could be read her Miranda Rights. TAYLOR stated that she understood SA Rutherford's instructions. The entire interview was digitally recorded.

13. TAYLOR was advised that she was being charged with Title 31, United States Code 5332, Bulk Cash Smuggling, where TAYLOR intended to evade the reporting requirements and knowingly concealed more than $10,000 in U.S. currency or monetary instruments, on her person, in an attempt to transport or transfer the currency or monetary instrument outside the United States.

14. TAYLOR stated that she understood what she was being charged with and was read her Miranda Rights, to which she advised that she did not wish to waive her rights. The interview was concluded at that time and the digital recorder was turned off.

15. Officer Seth Wheeler, with the Clayton County Police Department, arrived with his K-9, Nero. The currency was placed in a white box and arranged with two other boxes against a wall, spaced approximately 5 feet apart. Officer Wheeler swept the entire room with his dog checking each portion of the room and lastly the boxes located against the wall. K-9 Nero did not indicate on any portion of the room or the first two boxes, except for the third box where the currency was located. K-9 Nero indicated on the box

by sitting down for a moment and then opening the box with his snout and sticking his nose inside where the currency was.

16. During TAYLOR'S booking process, she indicated that she had done this trip twice before and that the currency was going into a bank. SA Rutherford stopped the booking process and began to digitally record the conversation. SA Rutherford again advised TAYLOR that before any statement could be taken from her, she would have to waive her Miranda Rights. TAYLOR asked if there was anything she could do to not go to jail. SA Rutherford explained that she was going to jail; however, if she cooperated with law enforcement, we would attempt to help her with her sentencing. TAYLOR then stated that she wished to speak to a lawyer. The interview was stopped.

17. Based on the information contained in this Affidavit, probable cause exists to believe that Yvonne Castle TAYLOR did unlawfully attempt to transport $10,000 or more in U.S. Currency with the intent to evade the reporting requirement by concealing the currency on her person out the United States in violation of Title 31, United States Code, Section 5332.